UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**04  2876**



WEXLER, J.

WALL, M.J.

--------------------------------------------------------- X Case No.
GARY COPELAND, Derivatively On Behalf of :
NBTY, INC.,

            Plaintiff,        :

     vs.                      :

SCOTT RUDOLPH, HARVEY KAMIL,   :
GLENN COHEN, MICHAEL L. ASHNER,  :
MICHAEL C. SLADE, ARAM G.      :
GARABEDIAN, BERNARD G. OWEN,   :
ARTHUR RUDOLPH, ALFRED SACKS,  :
MURRAY DALY, NATHAN ROSENBLATT :
and PETER J. WHITE,          :

                Defendants,    :

    - and -                  :

NBTY, INC., a Delaware corporation,   :

       Nominal Defendant.   :
--------------------------------------------------------- X

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT AND JURY DEMAND

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

### NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of NBTY, INC. ("NBTY" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred between April 22, 2004 and the present (the "Relevant Period") and that have caused substantial losses to NBTY and other damages, such as to its reputation and goodwill.

-1-

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.

3.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by an Eastern District New York Court permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in an Eastern District New York Court because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to NBTY occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

5.      Plaintiff Gary Copeland is, and was at times relevant hereto, an owner and holder of NBTY common stock. Copeland is a citizen of California.

6.      Nominal defendant, NBTY is a corporation organized and existing under the laws of the state of Delaware with its headquarters located at 90 Orville Drive, Bohemia, New York 11716. NBTY is a vertical integrated manufacturer and distributor of nutritional supplements in the United States, the United Kingdom, Ireland, the Netherlands and worldwide. The Company markets more than 1,200 products under several brand names.

7.      Defendant Scott Rudolph ("S. Rudolph") is, and at all times relevant hereto was, Chairman of the Board (the "Board") and Chief Executive Officer ("CEO") of NBTY. Because of

-2-

S. Rudolph's positions, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, S. Rudolph participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and Securities and Exchange Commission ("SEC") filings. For FY:03, NBTY paid defendant S. Rudolph $1,358,963 in salary, bonus and other compensation. During the Relevant Period, S. Rudolph sold 400,000 shares of NBTY stock for proceeds of $14,157,812. S. Rudolph is citizen of New York.

8.     Defendant Harvey Kamil ("Kamil") is, and at all times relevant hereto was, President and Chief Financial Officer of NBTY. Because of Kamil's positions, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Kamil participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, NBTY paid defendant Kamil $729,589 in salary, bonus and other compensation. During the Relevant Period, Kamil sold 200,100 shares of NBTY stock for proceeds of $7,796,896. Kamil is a citizen of New York.

9.     Defendant Michael C. Slade ("Slade") is, and at all times relevant hereto was, Senior Vice President, Secretary and a director of NBTY. Because of Slade's positions, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access

to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Slade participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, NBTY paid defendant Slade $441,569 in salary, bonus and other compensation. During the Relevant Period, Slade sold 169,600 shares of NBTY stock for proceeds of $6,279,076. Slade is a citizen of New York.

10.    Defendant Arthur Rudolph ("A. Rudolph") is, and at all times relevant hereto was, a director of NBTY. A. Rudolph is the founder of NBTY and has been a consultant to NBTY since 1997. Because of A. Rudolph's position, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, A. Rudolph participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. A. Rudolph is a citizen of Florida.

11.    Defendant Murray Daly ("Daly") is, and at all times relevant hereto was, a director of NBTY. Because of Daly's position, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Daly participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Daly is a citizen of Florida.

-4-

12.     Defendant Aram G. Garabedian ("Garabedian") is, and at all times relevant hereto was, a director of NBTY. Because of Garabedian's position, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Garabedian participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Garabedian is a citizen of Rhode Island.

13.     Defendant Bernard G. Owen ("Owen") is, and at all times relevant hereto was, a director of NBTY. Because of Owen's position, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Owen participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Owen is a citizen of New York.

14.     Defendant Alfred Sacks ("Sacks") is, and at all times relevant hereto was, a director of NBTY. Because of Sacks' position,  he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Sacks participated in the

issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Sacks is a citizen of Florida.

15.     Defendant Glenn Cohen ("Cohen") is, and at all times relevant hereto was, a director of NBTY. Because of Cohen's position, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Cohen participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and filings. Cohen is a citizen of New York.

16.     Defendant Nathan Rosenblatt ("Rosenblatt") is, and at all times relevant hereto was, a director of NBTY. Because of Rosenblatt's position, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Rosenblatt participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Rosenblatt is a citizen of New York.

17.     Defendant Michael L. Ashner ("Ashner") is, and at all times relevant hereto was, a Director of NBTY. Because of Ashner's position, he knew the adverse non-public information about the business of NBTY, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant

-6-

Period, Ashner participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Ashner is a citizen of New York.

18.    Defendant Peter J. White ("White") is, and at all times relevant hereto was, a director of NBTY. Because of White's position, he knew the adverse non-public information about the business of NBTY, specifically its decline in sales at its Vitamin World Stores, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, White participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. White is a citizen of New York.

19.    The defendants identified in ¶¶7, 9-18 are referred to herein as the "Director Defendants." The defendants identified in ¶¶7-9 is referred to herein as the "Officer Defendant." The defendants identified in ¶¶7-9 are referred to herein as the "Insider Selling Defendants." Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20.    By reason of their positions as officers, directors and/or fiduciaries of NBTY and because of their ability to control the business and corporate affairs of NBTY, the Individual Defendants owed NBTY and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage NBTY in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of NBTY and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

21.     Each director and officer of the Company owes to NBTY and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

22.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of NBTY, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with NBTY, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations and improper representations of NBTY.

23.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of NBTY and was at all times acting within the course and scope of such agency.

24.     To discharge their duties, the officers and directors of NBTY were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of NBTY were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)    remain informed as to how NBTY conducted its operations, and upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)    ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

25.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of NBTY, the absence of good faith on their part and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of NBTY's Board during the Relevant Period.

26.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra* and by failing to prevent the Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws.  As a result, NBTY has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b)     costs incurred in investigating and defending NBTY and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

27.     Moreover, these actions have irreparably damaged NBTY's corporate image and goodwill.  For at least the foreseeable future, NBTY will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that NBTY's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

28.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

29.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants'

executive and directorial positions at NBTY and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of NBTY, regarding the Individual Defendants' management of NBTY's operations, the Company's financial health and stability and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

30.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least April 22, 2004 and continuing thereafter. During this time the Individual Defendants caused the Company to conceal the true fact that NBTY was misrepresenting its financial results. In addition, defendants also made other specific, false statements about NBTY's financial performance and future business prospects, as alleged herein.

31.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of NBTY common stock so they could: (i) dispose of $28,233,784 of their personally held stock; (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

32.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

33.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing and was aware of his or her  overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

34.     NBTY is a vertically integrated manufacturer, marketer and retailer of nutritional supplements in the United States, the United Kingdom, Ireland, the Netherlands and worldwide.

35.     At the start of the Relevant Period, the Individual Defendants caused the Company to announce that the Company had experienced a "record" quarter, in which its financial results exceeded analyst expectations, causing shares of the Company's stock price to rise almost 5%. The Individual Defendants attributed the increased revenues, in part, to "the Company's ability to more effectively target market its customer base." As part of the same announcement, defendants advised investors that they were confident that the Company would continue to grow its revenue and market share.  Unbeknownst to investors, however, the increased financial results was the result of a shift in the timing of a promotional mailing and was not attributable to any long term improvement at the Company.  As was ultimately disclosed by defendants at the end of the Relevant Period, the Company's financial results in the third quarter, which did not include this promotional campaign, suffered from a slowdown in sales.

36.     Moreover, by at least the start of the Relevant Period, the Individual Defendants knew, but failed to disclose, that sales at the Company's Vitamin World stores were declining because customers were increasingly purchasing their vitamins and other health supplements at mass market merchants, such as drugstores and deep discounters and not at specialty health stores such as Vitamin World.

37.     When this information was belatedly disclosed to the market, shares of NBTY common stock fell 26%. Prior to the disclosure of this information, defendants S. Rudolph, Kamil

-12-

and Slade sold 769,000 shares of their personally-held stock at artificially inflated prices for gross proceeds of $28,233,784.

## IMPROPER STATEMENTS

38.     The Relevant Period begins on April 22, 2004.  On that date, the Individual Defendants caused the Company to announce "record" financial results for the second quarter of fiscal 2004, the period ended March 31, 2004.  For the quarter, the Company reported increased sales across all of the Company's businesses.  Specifically, the Company announced that sales increased 58% to $440 million, compared with sales of $278 million for the comparable period in the prior year. Defendants attributed the increased revenues, in part, to "the Company's ability to more effectively target market its customer base."  Defendant S. Rudolph commented positively on the Company's performance and prospects, stating, in pertinent part, as follows:

> "We are very pleased to report a second consecutive quarter of record results and sales increases across all divisions. The successful integration of Rexall continues to contribute to our overall revenue growth and lends further credence to our strategic plan to enhance wholesale operations and further our position as the dominant force in the worldwide nutritional supplement market. *We anticipate continued growth in revenue and market share and remain confident in the long term outlook for NBTY.*"

39.     Later that same day, the Individual Defendants held a conference call in which they discussed the Company's performance and responded to questions posed by investors.  Defendant S. Rudolph began the call by positively describing the Company's growth, stating: "We would describe the results of this quarter as NBTY is getting bigger, better and stronger...." "We expect to maintain our sales momentum."  Concerning the performance of the Puritan's Pride business, S. Rudolph stated: "[Puritan's] Pride, our direct response E-commerce operation had sales of $70 million, an increase of 35%."

40.     By the end of trading on that day, shares of NBTY common stock had increased almost 5%.

41.     The next day, on April 23, 2004, in response to this announcement, Gary M. Giblen, an analyst at C.L. King & Associates, issued a positive report on NBTY's prospects, stating, in pertinent part, as follows:

> The strong performance was led by the Direct Response segment, with sales increasing 35% year over year. *This was accomplished by easier year over year comparisons, higher average order size, more effective advertising (television advertising for the first time), and refinement of direct customer marketing strategies.* In light of these initiatives, in our analysis, we view this performance as sustainable going forward and accordingly have adjusted our sales and margin estimates for this division upward.

### THE TRUTH IS REVEALED

42.     On June 17, 2004, the Individual Defendants caused the Company to announce that its Direct Response and Vitamin World operations had experienced lower sales for the two month period ending May 31, 2004. Specifically, for the two month period, sales from Puritan's Pride direct response decreased 12% from the comparable period in the prior year to $38 million and sales from Vitamin World retail stores decreased 1% from the comparable period in the prior year to $36 million.

43.     Later that same day, the Individual Defendants held a conference call with investors in which they discussed the decline in revenue. The Individual Defendants attributed the decline in retail sales to a shift from specialty retailing of vitamins to mass market. Further, the Individual Defendants also attributed the decline in direct response sales to the timing of when the catalogs were sent to customers. Specifically, defendants felt that the major increase in sales in the prior quarter negatively impacted sales in the current quarter. In that regard, defendant S. Rudolph stated: "And last quarter we had a really major increase at 35 percent and we feel it affected somewhat of our sales for this quarter that we're in right now...." "[E]ven though sales are down somewhat [in the mail-order business] we don't really see the weakness there, even though the numbers there - *it's more of the way the catalogs hit."* Concerning the decline in retail sales, defendant S. Rudolph stated: "We see more of a weakness in the U.S. specialty vitamin retailing business right now, which affects health food stores and our Vitamin World stores." Additionally, defendants disclosed that

-14-

their sale expectations for the year end would no longer be met. Specifically, defendant Kamil stated: "We had anticipated sales of 1.7 billion. With these numbers that I look at, it doesn't look like we're going to make that 1.7 billion."

44. Following these disclosures, shares of the Company's stock fell $9.51 per share, or 26%, to close at $26.99 per share, on extremely high trading volume.

45. The statements referenced above in ¶¶38-39 were each materially false and misleading when made as they failed to disclose and/or misrepresented the following material adverse facts which were then known to defendants or recklessly disregarded by them:

(a) that the Company's increased financial results over the prior year was attributable to a shift in the timing of a promotional mailing and was not attributable to any long term improvement at the Company;

(b) that a significant number of customers had shifted to purchasing supplements in the mass channel area such as drug chains and deep discounters, thereby negatively impacting the Company's retail sales at its Vitamin World chain; and

(c) that as a result of the foregoing, the Individual Defendants' positive statements concerning the Company's prospects were lacking in a reasonable basis at all relevant times.

46. As a result of the Individual Defendants' actions, NBTY's market capitalization has been damaged by over $734 million. At the same time that the Individual Defendants were causing NBTY to suffer such devastation of its market capitalization, the Insider Selling Defendants fared much better by selling over $28,233,784 of their personally held stock.

## ILLEGAL INSIDER SELLING

47. While in possession of the undisclosed material adverse information, the Insider Selling Defendants sold the following shares of NBTY stock:

NBTY, INC.
Insider Sales
April 22, 2004-June 16, 2004

-15-

| Names | Position | Date | Shares | Price | Proceeds | |
|-------|----------|------|--------|-------|----------|---|
| Scott Rudolph | CEO, D | 5/11/2004 | 3,200 | $ 35.00 | $ | 112,000.00 |
| | | 5/11/2004 | 3,600 | $ 35.01 | $ | 126,036.00 |
| | | 5/11/2004 | 600 | $ 35.02 | $ | 21,012.00 |
| | | 5/11/2004 | 800 | $ 34.97 | $ | 27,976.00 |
| | | 5/11/2004 | 100 | $ 34.98 | $ | 3,498.00 |
| | | 5/11/2004 | 200 | $ 34.99 | $ | 6,998.00 |
| | | 5/11/2004 | 200 | $ 34.93 | $ | 6,986.00 |
| | | 5/11/2004 | 1,900 | $ 34.95 | $ | 66,405.00 |
| | | 5/11/2004 | 1,100 | $ 34.96 | $ | 38,456.00 |
| | | 5/11/2004 | 100 | $ 34.89 | $ | 3,489.00 |
| | | 5/11/2004 | 300 | $ 34.90 | $ | 10,470.00 |
| | | 5/11/2004 | 200 | $ 34.91 | $ | 6,982.00 |
| | | 5/11/2004 | 200 | $ 34.84 | $ | 6,968.00 |
| | | 5/11/2004 | 2,200 | $ 34.85 | $ | 76,670.00 |
| | | 5/11/2004 | 100 | $ 34.87 | $ | 3,487.00 |
| | | 5/11/2004 | 1,700 | $ 34.80 | $ | 59,160.00 |
| | | 5/11/2004 | 300 | $ 34.81 | $ | 10,443.00 |
| | | 5/11/2004 | 500 | $ 34.82 | $ | 17,410.00 |
| | | 5/11/2004 | 200 | $ 34.76 | $ | 6,952.00 |
| | | 5/11/2004 | 100 | $ 34.78 | $ | 3,478.00 |
| | | 5/11/2004 | 600 | $ 34.79 | $ | 20,874.00 |
| | | 5/11/2004 | 1,600 | $ 34.71 | $ | 55,536.00 |
| | | 5/11/2004 | 900 | $ 34.72 | $ | 31,248.00 |
| | | 5/11/2004 | 100 | $ 34.74 | $ | 3,474.00 |
| | | 5/11/2004 | 2,800 | $ 34.68 | $ | 97,104.00 |
| | | 5/11/2004 | 100 | $ 34.69 | $ | 3,469.00 |
| | | 5/11/2004 | 1,100 | $ 34.70 | $ | 38,170.00 |
| | | 5/11/2004 | 12,000 | $ 34.65 | $ | 415,800.00 |
| | | 5/11/2004 | 1,000 | $ 34.66 | $ | 34,660.00 |
| | | 5/11/2004 | 1,000 | $ 34.67 | $ | 34,670.00 |
| | | 5/11/2004 | 1,100 | $ 35.46 | $ | 39,006.00 |
| | | 5/11/2004 | 7,300 | $ 35.40 | $ | 258,420.00 |
| | | 5/11/2004 | 200 | $ 35.41 | $ | 7,082.00 |
| | | 5/11/2004 | 1,500 | $ 35.45 | $ | 53,175.00 |
| | | 5/11/2004 | 700 | $ 35.34 | $ | 24,738.00 |
| | | 5/11/2004 | 9,100 | $ 35.35 | $ | 321,685.00 |
| | | 5/11/2004 | 100 | $ 35.36 | $ | 3,536.00 |
| | | 5/11/2004 | 1,600 | $ 35.31 | $ | 56,496.00 |
| | | 5/11/2004 | 3,800 | $ 35.32 | $ | 134,216.00 |
| | | 5/11/2004 | 1,800 | $ 35.33 | $ | 63,594.00 |
| | | 5/11/2004 | 100 | $ 35.26 | $ | 3,526.00 |
| | | 5/11/2004 | 700 | $ 35.27 | $ | 24,689.00 |
| | | 5/11/2004 | 6,300 | $ 35.30 | $ | 222,390.00 |
| | | 5/11/2004 | 1,000 | $ 35.23 | $ | 35,230.00 |
| | | 5/11/2004 | 100 | $ 35.24 | $ | 3,524.00 |
| | | 5/11/2004 | 1,600 | $ 35.25 | $ | 56,400.00 |
| | | 5/11/2004 | 700 | $ 35.19 | $ | 24,633.00 |
| | | 5/11/2004 | 3,700 | $ 35.20 | $ | 130,240.00 |
| | | 5/11/2004 | 500 | $ 35.22 | $ | 17,610.00 |
| | | 5/11/2004 | 400 | $ 35.15 | $ | 14,060.00 |

| Date | Shares | Price | Total |
|---|---|---|---|
| 5/11/2004 | 400 | $ 35.17 | $ 14,068.00 |
| 5/11/2004 | 500 | $ 35.18 | $ 17,590.00 |
| 5/11/2004 | 5,300 | $ 35.09 | $ 185,977.00 |
| 5/11/2004 | 2,400 | $ 35.10 | $ 84,240.00 |
| 5/11/2004 | 500 | $ 35.11 | $ 17,555.00 |
| 5/11/2004 | 100 | $ 35.03 | $ 3,503.00 |
| 5/11/2004 | 900 | $ 35.04 | $ 31,536.00 |
| 5/11/2004 | 1,100 | $ 35.05 | $ 38,555.00 |
| 5/11/2004 | 200 | $ 35.06 | $ 7,012.00 |
| 5/11/2004 | 1,200 | $ 35.08 | $ 42,096.00 |
| 5/11/2004 | 300 | $ 35.47 | $ 10,641.00 |
| 5/11/2004 | 600 | $ 35.63 | $ 21,378.00 |
| 5/11/2004 | 300 | $ 35.64 | $ 10,692.00 |
| 5/11/2004 | 100 | $ 35.65 | $ 3,565.00 |
| 5/11/2004 | 3,100 | $ 35.60 | $ 110,360.00 |
| 5/11/2004 | 1,200 | $ 35.61 | $ 42,732.00 |
| 5/11/2004 | 1,800 | $ 35.62 | $ 64,116.00 |
| 5/11/2004 | 200 | $ 35.54 | $ 7,108.00 |
| 5/11/2004 | 600 | $ 35.57 | $ 21,342.00 |
| 5/11/2004 | 100 | $ 35.59 | $ 3,559.00 |
| 5/11/2004 | 400 | $ 35.48 | $ 14,192.00 |
| 5/11/2004 | 10,000 | $ 35.50 | $ 355,000.00 |
| 5/11/2004 | 500 | $ 35.53 | $ 17,765.00 |
| 5/10/2004 | 3,400 | $ 34.78 | $ 118,252.00 |
| 5/10/2004 | 600 | $ 34.79 | $ 20,874.00 |
| 5/10/2004 | 1,500 | $ 34.80 | $ 52,200.00 |
| 5/10/2004 | 6,400 | $ 34.75 | $ 222,400.00 |
| 5/10/2004 | 1,200 | $ 34.76 | $ 41,712.00 |
| 5/10/2004 | 500 | $ 34.77 | $ 17,385.00 |
| 5/10/2004 | 900 | $ 34.72 | $ 31,248.00 |
| 5/10/2004 | 1,500 | $ 34.73 | $ 52,095.00 |
| 5/10/2004 | 1,000 | $ 34.74 | $ 34,740.00 |
| 5/10/2004 | 900 | $ 34.68 | $ 31,212.00 |
| 5/10/2004 | 5,400 | $ 34.70 | $ 187,380.00 |
| 5/10/2004 | 400 | $ 34.71 | $ 13,884.00 |
| 5/10/2004 | 21,600 | $ 34.65 | $ 748,440.00 |
| 5/10/2004 | 1,600 | $ 34.66 | $ 55,456.00 |
| 5/10/2004 | 100 | $ 34.67 | $ 3,467.00 |
| 5/10/2004 | 2,100 | $ 34.81 | $ 3,467.00 |
| 5/10/2004 | 600 | $ 35.09 | $ 73,101.00 |
| 5/10/2004 | 300 | $ 34.82 | $ 10,446.00 |
| 5/10/2004 | 1,600 | $ 34.83 | $ 55,728.00 |
| 5/10/2004 | 100 | $ 35.17 | $ 3,517.00 |
| 5/10/2004 | 500 | $ 35.15 | $ 17,575.00 |
| 5/10/2004 | 400 | $ 35.06 | $ 14,024.00 |
| 5/10/2004 | 100 | $ 35.07 | $ 3,507.00 |
| 5/10/2004 | 200 | $ 35.16 | $ 7,032.00 |
| 5/10/2004 | 100 | $ 35.03 | $ 3,503.00 |
| 5/10/2004 | 700 | $ 35.04 | $ 24,528.00 |
| 5/10/2004 | 26,000 | $ 35.05 | $ 911,300.00 |
| 5/10/2004 | 21,700 | $ 35.00 | $ 759,500.00 |
| 5/10/2004 | 1,100 | $ 35.01 | $ 38,511.00 |
| 5/10/2004 | 200 | $ 35.02 | $ 7,004.00 |

| | | | | |
|---|---|---|---|---|
| 5/10/2004 | 3,200 | $ 34.97 | $ | 111,904.00 |
| 5/10/2004 | 5,600 | $ 34.98 | $ | 195,888.00 |
| 5/10/2004 | 1,700 | $ 34.99 | $ | 59,483.00 |
| 5/10/2004 | 500 | $ 34.94 | $ | 17,470.00 |
| 5/10/2004 | 6,500 | $ 34.95 | $ | 227,175.00 |
| 5/10/2004 | 700 | $ 34.96 | $ | 24,472.00 |
| 5/10/2004 | 400 | $ 34.91 | $ | 13,964.00 |
| 5/10/2004 | 500 | $ 34.92 | $ | 17,460.00 |
| 5/10/2004 | 500 | $ 34.93 | $ | 17,465.00 |
| 5/10/2004 | 500 | $ 34.88 | $ | 17,440.00 |
| 5/10/2004 | 300 | $ 34.89 | $ | 10,467.00 |
| 5/10/2004 | 18,500 | $ 34.90 | $ | 645,650.00 |
| 5/10/2004 | 300 | $ 34.84 | $ | 10,452.00 |
| 5/10/2004 | 5,600 | $ 34.85 | $ | 195,160.00 |
| 5/10/2004 | 1,300 | $ 34.86 | $ | 45,318.00 |
| 5/10/2004 | 200 | $ 35.25 | $ | 7,050.00 |
| 5/10/2004 | 300 | $ 35.18 | $ | 10,554.00 |
| 5/10/2004 | 1,700 | $ 35.20 | $ | 59,840.00 |
| 5/10/2004 | 100 | $ 35.23 | $ | 3,523.00 |
| 5/7/2004 | 200 | $ 36.19 | $ | 7,238.00 |
| 5/7/2004 | 1,700 | $ 36.20 | $ | 61,540.00 |
| 5/7/2004 | 2,000 | $ 36.22 | $ | 72,440.00 |
| 5/7/2004 | 7,600 | $ 36.15 | $ | 274,740.00 |
| 5/7/2004 | 1,700 | $ 36.16 | $ | 61,472.00 |
| 5/7/2004 | 900 | $ 36.18 | $ | 32,562.00 |
| 5/7/2004 | 1,300 | $ 36.12 | $ | 46,956.00 |
| 5/7/2004 | 2,900 | $ 36.13 | $ | 104,777.00 |
| 5/7/2004 | 4,600 | $ 36.14 | $ | 166,244.00 |
| 5/7/2004 | 10,300 | $ 36.09 | $ | 371,727.00 |
| 5/7/2004 | 17,900 | $ 36.10 | $ | 646,190.00 |
| 5/7/2004 | 1,400 | $ 36.11 | $ | 50,554.00 |
| 5/7/2004 | 2,000 | $ 36.04 | $ | 72,080.00 |
| 5/7/2004 | 2,900 | $ 36.05 | $ | 104,545.00 |
| 5/7/2004 | 7,700 | $ 36.06 | $ | 277,662.00 |
| 5/7/2004 | 500 | $ 36.01 | $ | 18,005.00 |
| 5/7/2004 | 7,800 | $ 36.02 | $ | 280,956.00 |
| 5/7/2004 | 1,800 | $ 36.03 | $ | 64,854.00 |
| 5/7/2004 | 100 | $ 36.25 | $ | 3,625.00 |
| 5/7/2004 | 8,400 | $ 36.45 | $ | 306,180.00 |
| 5/7/2004 | 10,500 | $ 36.00 | $ | 378,000.00 |
| 5/7/2004 | 300 | $ 36.48 | $ | 10,944.00 |
| 5/7/2004 | 1,500 | $ 36.50 | $ | 54,750.00 |
| 5/7/2004 | 1,300 | $ 36.51 | $ | 47,463.00 |
| 5/7/2004 | 200 | $ 36.24 | $ | 7,248.00 |
| 5/7/2004 | 1,100 | $ 36.46 | $ | 40,106.00 |
| 5/7/2004 | 1,400 | $ 36.47 | $ | 51,058.00 |
| 5/7/2004 | 3,900 | $ 36.72 | $ | 143,208.00 |
| 5/7/2004 | 300 | $ 36.73 | $ | 11,019.00 |
| 5/7/2004 | 1,000 | $ 36.74 | $ | 36,740.00 |
| 5/7/2004 | 1,000 | $ 36.69 | $ | 36,690.00 |
| 5/7/2004 | 19,300 | $ 36.70 | $ | 708,310.00 |
| 5/7/2004 | 4,300 | $ 36.71 | $ | 157,853.00 |
| 5/7/2004 | 1,900 | $ 36.66 | $ | 69,654.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | 5/7/2004 | 1,700 | $ 36.67 | $ 62,339.00 |
| | | 5/7/2004 | 1,000 | $ 36.68 | $ 36,680.00 |
| | | 5/7/2004 | 500 | $ 36.54 | $ 18,270.00 |
| | | 5/7/2004 | 100 | $ 36.55 | $ 3,655.00 |
| | | 5/7/2004 | 400 | $ 36.56 | $ 14,624.00 |
| | | 5/7/2004 | 600 | $ 36.53 | $ 21,918.00 |
| | | | **400,000** | | **$14,157,812.00** |
| Harvey Kamil | P | 5/5/2004 | 41,600 | $ 39.00 | $ 1,622,400.00 |
| | | 5/5/2004 | 500 | $ 39.05 | $ 19,525.00 |
| | | 5/5/2004 | 300 | $ 39.04 | $ 11,712.00 |
| | | 5/4/2004 | 1,500 | $ 39.50 | $ 59,250.00 |
| | | 5/4/2004 | 15,200 | $ 39.00 | $ 592,800.00 |
| | | 5/3/2004 | 300 | $ 39.02 | $ 11,706.00 |
| | | 5/3/2004 | 3,600 | $ 39.03 | $ 140,508.00 |
| | | 5/3/2004 | 41,700 | $ 39.05 | $ 1,628,385.00 |
| | | 5/3/2004 | 50,000 | $ 38.80 | $ 1,940,000.00 |
| | | 5/3/2004 | 44,400 | $ 39.00 | $ 1,731,600.00 |
| | | 5/3/2004 | 1,000 | $ 39.01 | $ 39,010.00 |
| | | | **200,100** | | **$ 7,796,896.00** |
| Michael C. Slade | D | 6/2/2004 | 1,900 | $ 37.09 | $ 70,471.00 |
| | | 6/2/2004 | 7,700 | $ 37.10 | $ 285,670.00 |
| | | 6/2/2004 | 26,200 | $ 37.06 | $ 970,972.00 |
| | | 6/2/2004 | 300 | $ 37.07 | $ 11,121.00 |
| | | 6/2/2004 | 2,200 | $ 37.08 | $ 81,576.00 |
| | | 6/2/2004 | 106,700 | $ 37.00 | $ 3,947,900.00 |
| | | 6/2/2004 | 1,600 | $ 37.01 | $ 59,216.00 |
| | | 6/2/2004 | 23,000 | $ 37.05 | $ 852,150.00 |
| | | | **169,600** | | **$ 6,279,076.00** |
| | | **TOTAL** | **769,700** | | **$28,233,784.00** |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

48.     Plaintiff brings this action derivatively in the right and for the benefit of NBTY to redress injuries suffered, and to be suffered, by NBTY as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. NBTY is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

-19-

49.    Plaintiff will adequately and fairly represent the interests of NBTY in enforcing and prosecuting its rights.

50.    Plaintiff is and was an owner of the stock of NBTY during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

51.    The current Board of NBTY consists of the following eleven individuals: defendants S. Rudolph, A. Rudolph, Garabedian, Owen, Sacks, Daly, Cohen, Rosenblatt, Ashner, Slade and White. Plaintiff has not made any demand on the present Board of NBTY to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

(a)    As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the improper accounting. While in possession of this material adverse non-public information regarding the Company, the following current members of the NBTY Board participated in the illegal insider selling:

(i)    During the Relevant Period, S. Rudolph sold 400,000 shares of NBTY stock for proceeds of $14,157,812;

(ii)    During the Relevant Period, Slade sold 169,600 shares of NBTY stock for proceeds of $6,279,076; and

(iii)    During the Relevant Period, Kamil sold 200,100 shares of NBTY stock for proceeds of $7,796,896. Because these defendants received a personal financial benefit from the

challenged insider trading transactions, these defendants are interested and any demand upon them is futile;

(b)      The Compensation Committee of the Board assists the Board in: (i) developing and periodically reviewing compensation policies for the Company, including stock options, restricted stock and similar rewards, consistent with and linked to the Company's strategies; (ii) evaluating the performance of the Company's CEO and determining his compensation annually; (iii) recommending the compensation of the Company's other officers to the Board annually; (iv) reviewing management's recommendations on executive compensation policies and programs; (v) recommending to the Board the fees of outside directors; (vi) reviewing and approving new Company benefit plans and amendments to existing benefit plans; (vii) approving all equity-based compensation plans; and (viii) reviewing benefit plan administration. The Compensation Committee is comprised of defendants Rosenblatt, Daly and Sacks. The Compensation Committee is comprised entirely of independent non-employee directors.  However, as the members of the Compensation Committee singularly control the other defendants' awards, which includes an annual retainer of $40,000 for services rendered as directors, the remaining members of the Board will not institute this action against defendants Rosenblatt, Daly and Sacks.  To do so would jeopardize each defendant's personal financial compensation.  Thus, demand on defendants A. Rudolph, Garabedian, Owen, Cohen, Ashner and White is futile;

(c)      The principal professional occupation of defendant S. Rudolph is his employment with NBTY, pursuant to which he received and continues to receive substantial monetary compensations and other benefits.  For FY:03, NBTY paid defendant S. Rudolph $1,358,963 in salary, bonus and other compensation. During the Relevant Period, S. Rudolph sold

-21-

400,000 shares of NBTY stock for proceeds of $14,157,812. Accordingly, defendant S. Rudolph lacks independence from defendants Rosenblatt, Daly and Sacks, defendants who are not disinterested and/or independent and who exert influence over defendant S. Rudolph's compensation by virtue of their position as members of the Compensation Committee. This lack of independence renders defendant S. Rudolph incapable of impartially considering a demand to commence and vigorously prosecute this action;

(d)     The principal professional occupation of defendant Slade is his employment with NBTY, pursuant to which he received and continues to receive substantial monetary compensations and other benefits. For FY:03, NBTY paid defendant Slade $441,569 in salary, bonus and other compensation. During the Relevant Period, Slade sold 169,600 shares of NBTY stock for proceeds of $6,279,076. Accordingly, defendant Slade lacks independence from defendants Rosenblatt, Daly and Sacks, defendants who are not disinterested and/or independent and who exert influence over defendant Slade's compensation by virtue of their position as members of the Compensation Committee. This lack of independence renders defendant Slade is incapable of impartially considering a demand to commence and vigorously prosecute this action;

(e)     According to NBTY's Proxy Statement filed with the SEC on or about March 29, 2004, the Individual Defendants caused the Company to pay approximately $453,000 to Rudolph Management Associates, Inc., pursuant to a consulting agreement with the Company. Defendant A. Rudolph is the President of Rudolph Management Associates, Inc. The agreement has been in place since January 1, 1997 and has been renewed for a successive one-year term, ending December 31, 2004. The agreement provides for a consulting fee in the annual amount of $450,000 for the period

ending December 31, 2004, payable in monthly installments. Defendant A. Rudolph will not jeopardize this lucrative consulting agreement by taking the action plaintiff requests;

(f)     According to NBTY's Proxy Statement filed with the SEC on or about March 29, 2004, Glenn-Scott Landscaping & Design ("Glenn-Scott"), a company owned by the brother of defendant Cohen, performed landscaping and maintenance on the Company's properties and received approximately $83,000 in compensation during FY:03. In addition, during FY:03, the Company paid approximately $17,000 to Save-On Sprinkler Co., a company owned by defendant Cohen. Defendant Cohen will not jeopardize the possibility of any lucrative future dealings NBTY might have with Glen-Scott and himself by taking the action plaintiff requests;

(g)     According to NBTY's Proxy Statement filed with the SEC on or about March 29, 2004, Gail Radvin, Inc., a corporation wholly-owned by Gail Radvin, received commissions from NBTY totaling approximately $643,000 on account of sales in certain foreign countries and had trade receivable balances of approximately $3,598,000 as of September 30, 2003. Gail Radvin is the sister of defendant A. Rudolph and the aunt of defendant S. Rudolph. Neither defendant A. Rudolph nor S. Rudolph will jeopardize any future dealings NBTY might pursue with Gail Radvin, their relative, in the future by taking the action plaintiff requests;

(h)     According to NBTY's Proxy Statement filed with the SEC on or about March 29, 2004, certain members of the immediate families (as defined in Rule 404 of Regulation S-K) of defendants A. Rudolph, S. Rudolph and Slade are employed by the NBTY. During FY:03, these immediate family members received aggregate compensation from the NBTY totaling approximately $1,068,000. Defendants A. Rudolph, S. Rudolph and Slade will not jeopardize the continued employment of their family members with NBTY by taking action plaintiff requests;

-23-

(i)     According to NBTY's Proxy Statement filed with the SEC on or about March 29, 2004, defendants Ashner, Rosenblatt and White were, during the Relevant Period, members of the Audit Committee. The Audit Committee is responsible for assisting the Board in its oversight of: (i) the qualifications, independence and performance of the Company's independent accountants and the performance of the Company's internal auditors and internal audit function; (ii) the integrity of the Company's financial statements and the Company's financial reporting processes and systems of internal control; and (iii) the Company's compliance with legal and regulatory requirements. The Audit Committee provides an avenue of communication among management, the independent accountants, the internal auditors and the Board. In carrying out its responsibilities, the Audit Committee also meets with the independent auditors in executive session, without members of management present. Nonetheless, the Audit Committee recommended that the Board include the improper financial statements and filing with the SEC.  By press releases the public, defendants Ashner, Rosenblatt and White breached their duties by causing or allowing the improper financials described above.  As a result of these defendants' breach of their duties, any demand upon them is futile;

(j)     The entire NBTY Board and senior management participated in the wrongs complained of herein.  NBTY's directors are not disinterested or independent due to the following: defendants A. Rudolph, Cohen, Ashner, Slade, S. Rudolph, Garabedian, Owen, Sacks, Daly, Rosenblatt and White served on the NBTY Board during the Relevant Period.  Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs.  Each of the above-referenced defendants breached the fiduciary duties that they owed to NBTY and its shareholders in that they failed to prevent and correct the improper

financials.  Thus, the NBTY Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected NBTY to millions of dollars in liability for possible violations of applicable securities laws;

(k)     The Individual Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein.  In addition to the conflicts that exist as a result of their participation in the improper accounting and insider selling, as detailed herein *supra*, the majority of the Board, including the defendants listed below, are subject to the following prejudicial entanglements:

(i)     A. Rudolph and S. Rudolph are father and son. Defendant A. Rudolph is NBTY's founder and was NBTY's former CEO and Chairman of the Board until 1993.  Defendant S. Rudolph joined NBTY in 1986 and is currently Chairman of the Board and CEO.  Because of their long-standing personal and professional relationships, neither defendant A. Rudolph nor defendant S. Rudolph will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(ii)     Defendant Ashner is President and CEO of First Union Real Estate Equity and Mortgage Investments and has been since December 31, 2003. Defendant Rosenblatt is a director of First Union Management, Inc., a subsidiary of First Union Real Estate Equity and Mortgage Investments. Because of their long-standing and entangling business and professional relationships, neither defendant Ashner nor defendant Rosenblatt will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

-25-

(iii)    Defendant S. Rudolph is on the Board of North Shore Hebrew Academy High School. Defendant Rosenblatt is also on the Board of North Shore Hebrew Academy High School. Because of their long-standing and entangling business and professional relationships, neither defendant S. Rudolph nor defendant Rosenblatt will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(l)    The Director Defendants of NBTY, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from NBTY's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(m)    In order to bring this suit, all of the directors of NBTY would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(n)    The acts complained of constitute violations of the fiduciary duties owed by NBTY's officers and directors and these acts are incapable of ratification;

(o)    Each of the Directors Defendants of NBTY authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

(p)    Any suit by the current directors of NBTY to remedy these wrongs would likely expose the Individual Defendants and NBTY to further violations of the securities laws that

-26-

would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(q)      NBTY has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for NBTY any part of the damages NBTY suffered and will suffer thereby;

(r)      If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

(s)      If NBTY's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of NBTY. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by NBTY against these defendants, known as, *inter alia*, the "insured versus insured

exclusion." As a result, if these directors were to sue themselves or certain of the officers of NBTY, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause NBTY to sue them, since they will face a large uninsured liability.

36.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for NBTY for any of the wrongdoing alleged by plaintiff herein.

### COUNT I

**Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

37.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

38.     At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold NBTY common stock on the basis of such information.

39.     The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold NBTY common stock.

40.     At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of NBTY

-28-

common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

41.     Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## COUNT II

### Against All Defendants for Breach of Fiduciary Duty

42.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

43.     The Individual Defendants owed and owe NBTY fiduciary obligations.  By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe NBTY the highest obligation of good faith, fair dealing, loyalty and due care.

44.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

45.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

46.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, NBTY has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

-29-

47.     Plaintiff on behalf of NBTY has no adequate remedy at law.

## COUNT III

### Against All Defendants for Abuse of Control

48.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

49.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence NBTY, for which they are legally responsible.

50.     As a direct and proximate result of the Individual Defendants' abuse of control, NBTY has sustained significant damages.

51.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

52.     Plaintiff on behalf of NBTY has no adequate remedy at law.

## COUNT IV

### Against All Defendants for Gross Mismanagement

53.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

54.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of NBTY in a manner consistent with the operations of a publicly held corporation.

55.   As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, NBTY has sustained significant damages in excess of hundreds of millions of dollars.

56.   As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

57.   Plaintiff on behalf of NBTY has no adequate remedy at law.

## COUNT V

### Against All Defendants for Waste of Corporate Assets

58.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59.   As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused NBTY to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions/billions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

60.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

61.   Plaintiff on behalf of NBTY has no adequate remedy at law.

## COUNT VI

### Against All Defendants for Unjust Enrichment

62.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

-31-

63.     By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of NBTY.

64.     Plaintiff, as a shareholder and representative of NBTY, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.      Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.      Awarding to NBTY restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

C.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

D.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 9, 2004                    FARUQI & FARUQI, LLP
                                       NADEEM FARUQI

                                       _____
                                                NADEEM FARUQI

-32-

320 East 39th Street
New York, NY 10016
Telephone: 212/983-9330
Facsimile: 212/983-9331

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
1010 Second Ave., Suite 2360
San Diego, CA  92101
Telephone:  619/525-3990
Facsimile: 619/525-3991

Attorneys for Plaintiff

## VERIFICATION

I, Jeffrey P. Fink, hereby declare as follows:

1.      I am a member of the law firm of Robbins Umeda & Fink, LLP, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.      I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

Executed this 8th day of July, 2004, at San Diego, California.

_____
JEFFREY P. FINK